IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


ROBERT LEE MORSE,

        Plaintiff,

vs.                               Case No. 16-2678-SAC

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,[1]

        Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984

---

[1] On January 20, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security.

(10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in

substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform

their previous work, they are determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On March 6, 2015, administrative law judge (ALJ) Michael D. Mance issued his decision (R. at 132-143). Plaintiff alleges that he has been disabled since September 1, 2012 (R. at 132).

4

Plaintiff is insured for disability insurance benefits through March 31, 2015 (R. at 134). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date (R. at 134). At step two, the ALJ found that plaintiff has severe impairments (R. at 134). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 136). After determining plaintiff's RFC (R. at 137-138), the ALJ found at step four that plaintiff is unable to perform any past relevant work (R. at 141). At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 142-143). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 143).

**III. Did the Appeals Council err by failing to consider medical opinion evidence submitted to them after the ALJ decision?**

In his decision, the ALJ found that plaintiff has the RFC to perform work at all exertional levels, but with the following nonexertional limitations: he should never climb ladders, ropes, and scaffolds. He should work in a temperature controlled environment. He should avoid concentrated exposure to unprotected heights and hazardous machinery. He is limited to the performance of unskilled work only, requiring no more than occasional contact with the public and coworkers. He cannot be required to perform any high production rate jobs, but

5

low and medium production rate jobs are okay (R. at 138).  With this RFC, the ALJ concluded that plaintiff could perform other work in the national economy, and was therefore not disabled.

After the ALJ decision, plaintiff submitted to the Appeals Council letters from Dr. Davis, a licensed clinical psychologist, Dr. Pashek, a speech-language pathologist and cognitive rehabilitation specialist, and Dr. Falola, a physician (R. at 9-13).  The Appeals Council reviewed these documents and other medical records submitted to them and concluded that this new information was about a later time, and did not affect the decision about whether plaintiff was disabled on or before March 6, 2015, the date of the ALJ decision (R. at 2).

The basic principle, derived from the relevant regulations, is well-established: the Appeals Council must consider additional evidence offered on administrative review-after which it becomes part of the court's record on judicial review-if it is (1) new, (2) material, and (3) related to the period on or before the date of the ALJ's decision.  <u>Krauser v. Astrue</u>, 638 F.3d 1324, 1328 (10th Cir. 2011).  Where the Appeals Council rejects new evidence as non-qualifying, and the claimant challenges that ruling on judicial review, it is a question of law subject to the court's de novo review.  <u>Id</u>.

Dr. Falola wrote his letter on November 20, 2015. He indicates that he has been treating plaintiff for the past few months. His letter states the following:

> Patient is a 51 yo veteran diagnosed with PTSD (non combat related). The patient reported the **PTSD symptoms secondary to an auto accident that occurred in 31 May, 2011**. A review of his CPRS medical records indicated that **he has been having problems with dealing with daily psychosocial stressors and has been having a steady decline in his ability to function and maintain a steady job since the above mentioned auto accident. This trauma triggered extreme anxiety symptoms, increased irritability, insomnia, difficulties dealing with stressful situations both at home and at work. Patient also reported angry outbursts, fluctuation of his mood including depression**. Considering the clinical symptoms, some of which were named above, **it is evident that this patient has been unable and will continue to have difficulty maintaining a job and take care of his needs**. This provider is support of this patient requesting for Social Security Disability.

(R. at 13, emphasis added).

Dr. Pashek wrote her letter on April 5, 2016. It states the following:

> This application is to support the application of Mr. Robert Morse…to receive Social Security Disability status. **Mr. Morse was involved in a serious accident as an over-the-road trucker in 2011 in which he suffered a traumatic brain injury (TBI) and from which he developed PTSD. He has ongoing emotional and cognitive (attention and executive functions) deficits as a**

7

>     result of this accident and is unable to be
>     employed despite his multiple attempts to
>     return to work.  He deficits are well
>     documented in his VAMC [Veterans
>     Administration Medical Center] medical
>     record, by Psychiatry (**see notes of Dr.
>     Duong 2012-2015**) and Dr. Falola (2015-2016),
>     and Psychology (notes of Dr. Davis), as well
>     as by Neuropsychology (Dr. Skadeland/Dr.
>     Harbaugh) and my personal Cognitive
>     Rehabilitation evaluation of the patient
>     (12/19/15) and ongoing treatment notes…..
>
>     This writer's opinion is that he is not
>     employable at this time.

(R. at 11, emphasis added).

The third letter, from Dr. Davis, is dated April 22, 2016, and states, in relevant part:

>     …**I have been conducting individual therapy
>     sessions with Mr. Morse since May 6,
>     2014**…After being involved in a motor vehicle
>     accident in 2011, Mr. Morse began
>     experiencing anxiety, depression, sleep
>     problems, and difficulties with focus and
>     concentration, which has significantly
>     impacted his psychosocial functioning.
>
>     Based on testing an clinical observations,
>     Mr. Morse has been diagnosed with
>     Posttraumatic Stress Disorder (PTSD) and
>     Insomnia Disorder.  His PTSD is very severe
>     and causes him to struggle with intrusive
>     memories, severe anxiety and depression,
>     anger, sleep problems, irritability and poor
>     concentration.  Mr. Morse has been compliant
>     with treatment and previously completed
>     components of a 12-session evidence based
>     treatment program for PTSD, during which I
>     spent a considerable amount of one on one
>     time with Mr. Morse.  **Mr. Morse** did
>     experience mild improvement with therapy,
>     but **continues to exhibit these same symptoms
>     which I firmly believe preclude his ability**

8

> **to successfully return to work activity at
> this time.  Mr. Morse has attempted a few
> part-time jobs in the past two years;
> however, his mental health symptoms appeared
> to cause problems and distress; resulting in
> terminations and/or needing to leave the
> positions.  Testing has recently shown that
> Mr. Morse also struggles with Traumatic
> Brain Injury (TBI), which further exacerbate
> his PTSD and Insomnia, making it
> exceptionally difficult for him to follow
> basic work tasks.  His irritability from
> mental health symptoms, combined with
> struggles from the TBI, creates intense
> emotional reactions that would certainly
> cause problems maintaining employment.  It
> is also my opinion that return to work by
> Mr. Morse at this time would undo the
> progress he has made thus far, as stress
> tends to exacerbate PTSD symptoms.**

(R. at 9-10, emphasis added).

The letters from Drs. Falola, Pashek, and Davis are new and material regarding plaintiff's impairments and limitations.  The question before the court is whether they are related to the period on or before the date of the ALJ's decision, March 6, 2015.  The letters were written on November 20, 2015, April 3, 2016 and April 22, 2016.  The letter from Dr. Falola does not mention any specific time period for his opinions, and Dr. Falola indicates that his treatment had been for the past few months (prior to November 2016).  However, Dr. Falola states that plaintiff's PTSD dates from an auto accident on May 31, 2011.  He also notes a steady decline by plaintiff in his

9

ability to function and maintain a steady job since the accident.

The letter from Dr. Pashek also does not mention any specific time period for her opinions, but notes that plaintiff's emotional and cognitive deficits are well documented in the medical records, including those of Dr. Duong from 2012-2015. Finally, the letter from Dr. Davis states that she had been treating plaintiff since May 6, 2014, 10 months prior to the ALJ decision. Dr. Davis noted that plaintiff's symptoms date from the time of the vehicular accident in 2011.

In the case of Baca v. Department of Health and Human Services, 5 F.3d 476, 479 (10th Cir. 1993), the court held that evidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date.[2] This principle equally applies to whether evidence presented to the Appeals Council is related to the period on or before the date of the ALJ's decision.

---

[2] In Baca, the medical records deemed relevant were records for medical care made within 14 months of the expiration of plaintiff's insured status. 5 F.3d at 479.

Dr. Davis had been treating plaintiff since May 6, 2014, 10 months prior to the ALJ's decision.  Dr. Pashek, in her letter, relied on medical records and treatment by Dr. Duong from 2012-2015.  Dr. Falola noted a steady decline in plaintiff's ability to function and maintain a job since the accident.  All three treatment providers clearly indicated that plaintiff's symptoms and impairments stem from the vehicular accident in 2011.  On the facts of this case, the court finds that the opinions offered to the Appeals Council from three treatment providers are new, material, and related to the period on or before the date of the ALJ's decision.

In his decision, the ALJ rejected the medical source opinions from two non-examining state agency psychologists, who found no severe mental impairments.  However, the ALJ indicated he gave "some" weight to their opinions.  The ALJ found that plaintiff's mental impairments were severe (R. at 140), but made mental RFC findings in the absence of any medical source opinions regarding the extent and severity of plaintiff's mental limitations.  However, an exact correspondence between a medical opinion and the RFC is not required.  In reaching his RFC determination, an ALJ is permitted, and indeed required, to rely on all of the record evidence, including but not limited to medical opinions in the file.  That said, in cases in which the medical opinions appear to conflict with the ALJ's decision

regarding the extent of a plaintiff's impairment(s) to the point of posing a serious challenge to the ALJ's RFC assessment, it may be inappropriate for the ALJ to reach an RFC determination without expert medical assistance. Wells v. Colvin, 727 F.3d 1061, 1071-1072 (10th Cir. 2013) (in Wells, the ALJ rejected 3 medical opinions, finding that they were inconsistent with the other evidence in the file; the court directed the ALJ, on remand, to carefully reconsider whether to adopt the restrictions on plaintiff's RFC detailed in the medical opinions, or determine whether further medical evidence is needed on this issue).

Furthermore, the opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).

In the case before the court, at the time of the ALJ decision, the only medical opinion evidence regarding plaintiff's mental RFC, that plaintiff did not have severe

mental impairments, was rejected by the ALJ.  However, the ALJ
stated that he gave "some" weight to their opinions (R. at 140).
These medical opinions were from non-examining medical sources,
whose opinions are entitled to the least weight.  The ALJ then
made mental RFC findings in the absence of any medical source
opinions regarding the extent and severity of plaintiff's mental
limitations.  The medical opinions of plaintiff's three
treatment providers, who are accorded more weight, clearly
conflict with the mental RFC findings made by the ALJ.  The
statements from the three treatment providers include one from
Dr. Davis, who began treating plaintiff 10 months prior to the
ALJ decision.  Dr. Pashek relied on plaintiff's medical records,
including treatment records from Dr. Duong, a psychiatrist who
treated plaintiff from 2012-2015.  Dr. Falola noted a steady
decline in plaintiff's ability to function and work since the
accident.  All three treatment providers make it clear that
plaintiff's symptoms, impairments, and limitations stem from his
vehicular accident in 2011.

    Furthermore, the court cannot say that the failure to
consider this additional opinion evidence from three treatment
providers is harmless error.[3]  In fact, the new evidence from Dr.

---

[3] Courts should apply the harmless error analysis cautiously in the administrative review setting. <u>Fischer-Ross v. Barnhart</u>, 431 F.3d 729, 733 (10th Cir. 2005).  However, it may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance where, based on material the ALJ did at least consider (just not properly), the court could confidently say that no reasonable factfinder, following the

Falola, Dr. Pashek, and Dr. Davis provides a clear basis for changing the ALJ's decision. Hardman v. Barnhart, 362 F.3d 676, 681 (10th Cir. 2004). In addition to their opinions that plaintiff cannot work, Dr. Davis states that plaintiff would have difficulty with focus and concentration. Dr. Davis also indicated that plaintiff suffers from severe anxiety and depression, anger and sleep problems, irritability and poor concentration. As a result of his PTSD, TBI, and insomnia, Dr. Davis believes that it would be exceptionally difficult for plaintiff to follow basic work tasks. Dr. Davis also stated that plaintiff's irritability stemming from his mental health symptoms and TBI creates intense emotional reactions that would certainly cause problems maintaining employment (R. at 9). Dr. Pashek also indicated that plaintiff has ongoing emotional and cognitive (attention and executive function) deficits which would preclude employment (R. at 11). Finally, Dr. Falola noted that trauma stemming from plaintiff's 2011 accident has triggered extreme anxiety symptoms, increased irritability, insomnia, and difficulties dealing with stressful situations at home and at work (R. at 13).

In light of the evidence set forth above, the court finds that substantial evidence does not support the ALJ's RFC

---

correct analysis, could have resolved the factual matter in any other way. Fischer-Ross, 431 F.3d at 733-734; Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004).

findings.  Therefore, this case shall be reversed and remanded in order for the Commissioner to consider the opinions of the three treatment sources and any related medical records.

**IV.  Other issues raised by the plaintiff**

Plaintiff has raised other issues, including the ALJ's credibility analysis, and whether the Commissioner sustained his burden at step five.  The court will not address these issues because they may be affected by the ALJ's resolution of the case on remand after considering the opinions of Dr. Falola, Dr. Pashek, and Dr. Davis, along with any related medical records.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 11th day of August 2017, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge